[No. 4211.]

THE AMANDA GOLD MINING AND MILLING CO. V. THE PEOPLE'S MINING AND MILLING CO. ET AL.

1.  CONTRACTS—ALTERNATIVE—PENALTY—SPECIFIC PERFORMANCE.

Where a contract stipulates for one of two things in the alternative, as for the conveyance of land or the payment of a certain sum of money in lieu thereof, equity will not interfere to decree a specific performance but will leave the injured party to his remedy of damages at law.  But where a contract stipulates for the conveyance of land and adds a penalty for the purpose of securing its performance, if the contract is one that otherwise calls for its interposition, equity will compel a specific performance.

2.  SAME.

Where a contract to convey land adds a provision to pay a certain sum in case of failure to convey, in case of doubt as to whether the sum so fixed is a penalty or liquidated damages, courts lean toward the former.

3.  CONTRACTS—ALTERNATIVE—ELECTION—SPECIFIC PERFORMANCE.

Where a contract to convey land or, in case of failure, to pay a certain sum of money is susceptible of the construction that it is in the alternative, giving the promisor the option to convey or pay as he chooses, if the time lapses within which he agrees to do the one or the other, the right of election shifts to the promisee, and he may sue for the one or the other as he sees fit.

*Appeal from the District Court of El Paso County.*

Mr. SAMUEL H. KINSLEY and Mr. J. M. HAWKINS for appellant.

Mr. JOHN P. BROCKWAY, Messrs. ULLERY & YOUNG and Mr. G. Q. RICHMOND for appellees.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

Of the Amanda and the Bogart conflicting lode mining claims, situate in Cripple Creek mining district, the former was the senior location.  Application for a patent of the

Bogart was first made, to which a protest was filed by the owners of the rival claim. The owners of both locations, being "desirous of settling the differences amicably and without litigation; and giving to the owners of each claim their respective rights", on September 30, 1892 entered into an agreement whereby the protest was withdrawn. In consideration whereof, the parties of the first part (owners of the Bogart) agreed within ten days after the issuance of the patent therefor "to convey to said second parties (owners of the Amanda) in equal proportion, or jointly, as they prefer, the surface ground included within the conflict, * * * saving, excluding and excepting from said deed so to be made the Bogart vein, lode, ledge or deposit wherever the same may be found to cross or pass through the conflicting surface, and the conveyances so to be drawn shall protect this right in first parties, their grantees and assigns, as they shall be advised by counsel to be legal."

Immediately succeeding the foregoing language of the contract was the following:

"It is agreed and understood that first parties failing to make the conveyance to said second parties as aforesaid, first parties will forfeit and pay to second parties the sum of one thousand ($1,000) dollars in lieu of said conveyance, and in full satisfaction thereof and of this agreement."

Defendants, the present owners of the Bogart lode, refusing to do either of those things, the plaintiff (grantee of the original owners of the Amanda lode and of their rights under the contract) brought this action on June 26, 1897, to compel them to make such conveyance. The answer was filed October 25, 1897, in which defendants deny the assignment to the plaintiff by the original owners of the Bogart claim of their rights under the contract, or that any demand for the conveyance was made upon them, or that plaintiff expended in developing and improving the tract of land in controversy any sum of money, as alleged in the complaint. By failing

to deny, they admitted, the execution of the contract and their failure to comply with its terms.   They controverted the right of plaintiff to any relief, but did not assert their option to pay.

March 30, 1898 defendants tendered in open court the sum of $1,005, as the forfeit(and interest) provided for in the contract, alleging, as a reason for not paying it within the time therein specified, that they did not know to whom it was payable, since divers persons were claiming it.   They asked that upon this tender they be discharged from further liability under the contract.

The only testimony introduced in the trial was that produced by the plaintiff, and the necessary facts which entitled it to some relief under the contract were clearly established.

The patent was issued October 18, 1894.   After the expiration of ten days from that time, numerous requests were made by plaintiff of defendants either to convey or pay the forfeit, but they failed to do either, giving as an excuse that the patent had not issued when demand was made; and when defendants neglected to perform either provision, plaintiff manifested its election by repeatedly asking for the conveyance.   After waiting for more than two years after the patent was issued, this action was begun.

It is the position of plaintiff that, taking the contract as a whole, the essential thing intended by the parties was the conveyance by the defendants of the ground in controversy, and that the agreement to pay one thousand dollars, if they failed to convey, was in the nature of a penalty to insure the performance of that covenant.  The position of defendants is that the contract, fairly construed, is in the alternative, and gave to them the option either to make the conveyance, or, if they chose otherwise, to pay the $1,000 and be discharged of any further obligation under the contract.   In other words, the clause providing for the payment of the fixed sum of

$1,000 is by the plaintiff said to be a penalty, and by the defendant liquidated damages. The general rule being that in the former case equity will, and in the latter will not, decree specific performance.

1. As stated by Mr. Waterman in his work on Specific Performance of Contracts at section 23: "If the agreement be construed as giving to the party the option to do the act or pay a certain sum, equity will not interfere." It leaves the other party to whom the promise is made to his action at law. In determining the question, however, the court looks to the entire agreement, and not merely to the language expressing the sum. It may thus ascertain the real intention of the parties; and if it clearly appears that the contract is to perform one of the alternatives, this will be specifically enforced notwithstanding the contract be alternative in its form. But where the contract stipulates for one of two things in the alternative, the doing of a certain act or the payment of a certain sum of money in lieu thereof, as already stated, "equity will not interfere to decree a specific performance of the first alternative, but will leave the injured party to his remedy of damages at law." 1 Pomeroy's Eq. Jurisp. (2d ed.) §447; Fry on Specific Performance of Contracts, § 66 *et seq.*

Yet where a person has agreed to do a certain act and has added a penalty for the purpose of securing its performance, if the contract is otherwise one which calls for its interposition, equity will compel the party specifically to perform. Pomeroy on Specific Perf. of Contracts (2d ed.)§50 and notes.

It is said by defendants that when plaintiff and its grantors made a demand upon the defendants for a conveyance, or, in lieu thereof, payment of the fixed sum of $1,000, a construction of the contract was thereby given which involves a recognition that it was one in the alternative giving to defendants the right to pay the money in lieu of making the conveyance.

On the other hand, plaintiff insists, as the evidence establishes, that the plaintiff and its grantors have, since the making of the contract, been in possession of the territory in conflict with the knowledge of defendants, and have made valuable improvements and expended the sum of about $900 in developing the same as a mining claim; and that these acts of the plaintiff and its grantors, acquiesced in by defendants, show that the parties to the contract themselves intended the conveyance as the real thing, and the insertion in the writing of the clause as to payment was merely a security for the performance of the chief thing therein embodied.

We think it true that there were certain acts of the plaintiff tending to a recognition of defendants' construction of the contract; and it is equally true that defendants recognized and admitted the construction contended for by plaintiff. We are inclined to hold, though not positively so deciding, since the parties made this arrangement to get a patent, for their mutual convenience, and to save litigation and expense, that the principal thing they had in view was the conveyance by the defendants, and that the provision for payment by them of a certain sum, in lieu of their failure to convey, was inserted as a penalty for the faithful performance of their covenant to do that principal thing, and not as liquidated damages for its breach.   In case of doubt whether a sum so fixed is a penalty or liquidated damages, courts lean toward the former.  *Turch v. Mining Co.* 8 Colo. 113; *O'Keefe v. Dyer*, 20 Mont. 477.

But if the contract is susceptible of the construction, as defendants contend, that it is in the alternative, a mere optional contract vesting in them the right to convey or pay, as they chose, yet, when the time elapsed in which they agreed to do the one or the other—the time for doing each being the same—the right of election shifted to the promisees, and they and their grantee might sue for the one or the other, as they saw fit.   Having made demand upon the defendants

to comply with either alternative, and the defendants having neglected for more than two years thereafter to exercise their option, the plaintiff might, as it has done in this case, elect to take the conveyance, and sue to enforce the execution of the provision relating thereto. Sugden on Vendors, 216; 1 Bishop on Contracts. § 785, 1435 and cases cited; *Choice v. Moseley*, 19 Amer.Dec. 661; 7 Am. & Eng. Enc. of law (2d ed.) 125 and notes; *Norris v. Harris*, 15 Cal. 226; 22 Am. & Eng. Enc. of Law (1st ed) 915, 970, 992 and notes.

After defendants thus neglected to exercise their option to pay the money rather than execute the conveyance, it would be inequitable to compel the plaintiff who, because of such failure, was obliged to bring suit to compel defendants to comply with the contract, to accept the payment of money when it elected to ask for a conveyance.

The judgment of the district court being in conflict with this conclusion, it is reversed and the cause remanded with instructions to the district court to vacate its judgment heretofore entered dismissing the action, and to enter a decree requiring the defendant Mining Company (in which the title now seems to rest) to convey by good and proper deed of conveyance the land in conflict between the two claims described in the agreement set out in the complaint, and as therein provided, and to permit defendants to withdraw the money heretofore deposited in court.

*Reversed.*