FRANCIS L. RICHARDS ET AL., APPELLEES, V. RONALD E.
BYCROFT ET AL., APPELLEES, IMPLEADED WITH CRANDELL
DEVELOPMENT CORPORATION, APPELLANT.

249 N. W. 2d 743

Filed January 26, 1977. No. 40778.

Munro & Munro, for appellant.

Ross, Schroeder & Fritzler, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH,
McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BOSLAUGH, J.

This case arises out of a controversy concerning a
contract for the sale of a tract of land in Kearney, Ne-
braska. The contract was in the form of an offer to
purchase by Crandell Development Corporation ac-
cepted May 4, 1973, by Ronald E. Bycroft, one of the
sellers and as agent for the other sellers. Bycroft
owned an undivided one-half interest in the property.

The contract provided for a purchase price of $75,000
of which $7,500 was earnest money deposited in escrow,
with the balance to be paid on final settlement. The
contract further provided the sellers agreed to pay the
expense of relocating a high pressure gas line which
ran diagonally through the property. The contract
provided the parties agreed to "close said purchase"
within 90 days after the abstract of title was furnished
for examination. In the event there were legal defects
in the title of the sellers which could not be cured with-
in a reasonable time the $7,500 downpayment was to be

refunded. In the event the buyer failed to perform, the deposit was to be retained by the sellers as liquidated damages.

On January 3, 1974, the sellers agreed to extend the closing date to February 10, 1974, in consideration of the deposit by the purchaser of an additional $2,500 as earnest money. On February 21, 1974, the parties entered into a memorandum agreement which extended the closing date to April 10, 1974. This agreement provided the purchase price would be increased to $77,000 and the buyer would deposit an additional $3,000 with Lowe & Company, the seller's real estate agent. The agreement further provided that in consideration for the extension of time the buyer "hereby authorizes Lowe & Company to pay off the mechanic's lien" resulting from the moving of the gas line "out of monies which have been previously deposited by the Buyer with Lowe & Company." The lien, which amounted to $7,556.48, was paid by Lowe & Company leaving a balance of $5,443.52 in the hands of the seller's agent.

On March 29, 1974, a judgment in the amount of $8,016 in favor of Raymond Siebke, Jr., executor, was entered against Bycroft which became a lien on his interest in the property. On April 1, 1974, the interest of Bycroft was attached by the Federal Deposit Insurance Corporation in a suit concerning the Elm Creek State Bank.

On April 13, 1974, the buyer requested additional time in which to close the transaction. On April 20, 1974, Crandell assigned its interest in the property to Motel 6, Inc.

On April 24, 1974, a judgment in the amount of $15,000 in favor of Anna L. Johnson, administratrix, was entered against Bycroft which became a lien on his interest in the property. On the same date Bycroft wrote to Lowe & Company requesting the balance on deposit less the agent's expenses be paid to the sellers'

attorney as liquidated damages. On April 26, 1974, John K. Hammer, acting in his own behalf and for the owners other than Bycroft, wrote to Lowe & Company stating that the owners other than Bycroft wished to proceed with the sale.

On May 2, 1974, a judgment in the amount of $166,-041.99 in favor of the United States National Bank was entered against Bycroft which became a lien on his interest in the property. Although the record is not clear, apparently this judgment related to a mortgage from Bycroft to the bank. The amount of the mortgage, which was a lien on Bycroft's interest, is not shown in the record.

On May 9, 1974, the sellers other than Bycroft were notified that Motel 6, Inc., had deposited the balance of the purchase price in the bank and was ready to close when satisfied with the title. On May 15, 1974, Bycroft again wrote to Lowe & Company demanding the net balance of the downpayment be sent to the seller's attorney.

Between April 20, 1974, and June 26, 1974, counsel for the sellers other than Bycroft and counsel for Crandell and Motel 6, Inc., attempted to work out an agreement with the lienholders that would permit the sale to be completed. On June 26, 1974, counsel concluded no agreement could be reached. Motel 6, Inc., reassigned its interest to Crandell who then demanded the earnest money be refunded to him.

This action was commenced by the sellers other than Bycroft to partition the property. Bycroft, Crandell, and the lienholders were joined as defendants. The only matter now in controversy is the disposition of the earnest money deposited by Crandell. The trial court held that the sellers were entitled to retain the $7,556.48 expended to move the gas line, and the balance of $5,443.52 should be refunded to Crandell. Crandell has appealed. There is no cross-appeal.

The plaintiffs argue that time was of the essence of

the contract. The contract did not expressly provide that time was of the essence and the conduct of the parties shows that they did not so consider it. See Dowd Grain Co., Inc. v. Pflug, 193 Neb. 483, 227 N. W. 2d 610. The interpretation given a contract by the parties themselves while engaged in the performance of the contract is one of the best indications of the true intent of the parties and, ordinarily, that construction of the contract should be enforced. Westbrook v. Masonic Manor, 185 Neb. 660, 178 N. W. 2d 280.

Apparently, the sellers regard the sale as an advantageous one and readily agreed to extensions when Crandell had difficulty with financing the purchase. When Bycroft demanded the balance of the earnest money, the other sellers disavowed his claim and advised Lowe & Company that they wished to proceed with the sale. On April 10, 1974, there were three liens against Bycroft's interest. The mortgage to the bank, the Siebke judgment, and the attachment suit. Bycroft was then unable to perform and was in no position to declare a forfeiture. It is a fair inference from the record that Bycroft was merely trying to salvage what he could when he attempted to declare a forfeiture and obtain the balance of the earnest money from Lowe & Company.

The remaining question is the construction to be placed on the memorandum agreement dated February 21, 1974. In this agreement Crandell "authorized" Lowe & Company to use the $13,000 he had deposited as earnest money to pay off the mechanic's lien for moving the gas line.

The original contract provided the sellers would pay the expense of relocating the gas line. The memorandum agreement did not provide that Crandell agreed to assume this expense and if the sale to Crandell had been completed the expense would have been paid by the sellers.

The entire contract was subject to the condition that

the sellers "have good, valid and merchantable title in fee simple." The memorandum agreement did not purport to modify this condition. The land has now been sold and the sellers have realized whatever benefit resulted from moving the gas line. It would be unreasonable to place the expense of moving the gas line upon Crandell, without regard to whether the contract was ultimately performed, in the absence of a clear and specific agreement to that effect.

The judgment of the District Court is reversed and the cause remanded with directions to enter a judgment for Crandell Development Corporation in the amount of $13,000 on its cross-petition.

REVERSED AND REMANDED WITH DIRECTIONS.