(110 So. 10)

## EATON v. SADLER. (6 Div. 459.)

(Supreme Court of Alabama. June 10, 1926. Rehearing Denied Nov. 4, 1926.)

1. Vendor and purchaser ⬚84—Contract provision for forfeiture of first payment for default of purchaser held not to give purchaser option to refuse performance by forfeiting payment.

Contract for sale, embodying receipt for part payment, which should be forfeited for default by purchaser, and which was accepted by the agent subject to approval by vendor, and was approved by vendor and by purchaser by indorsement, held to leave purchaser no option to withdraw from the contract by forfeiting part payment.

2. Specific performance ⬚106(1)—Vendor's agent, who negotiated sale contract, even if party to such contract, held not necessary party to suit for specific performance.

In suit for specific performance of contract for sale, providing for division of part payment, if forfeited, between agent and vendor, agent was not necessary party, even if party to contract, since agreement between agent and vendor would determine disposition of part payment.

### 3. Specific performance ⬤⇒58.

Stipulation in executory contract for penalty or liquidated damages, in event of default, does not bar suit for specific performance, unless contract shows contrary intention.

### 4. Specific performance ⬤⇒58.

Under contract providing that purchaser's part payment, if forfeited, should be divided between vendor and his agent, default *held* not to convert money into liquidated damages so as to bar specific performance until vendor so elects.

### 5. Specific performance ⬤⇒58.

Vendor's retention of part payment after purchaser's default was not election to forfeit the money so as to bar specific performance.

### 6. Vendor and purchaser ⬤⇒80.

Vendor and purchaser must be presumed to have contracted with reference to applicable principles of law.

### 7. Vendor and purchaser ⬤⇒80.

Provision that seller should furnish an abstract showing good and merchantable title is presumed to mean such title in the vendor.

### 8. Specific performance ⬤⇒114(4).

In suit for specific performance, bill alleging compliance with contract according to its terms is sufficient whatever term may mean.

### 9. Vendor and purchaser ⬤⇒130(8).

Generally, purchaser will not be required to take property subject to lien or incumbrance.

### 10. Vendor and purchaser ⬤⇒144(1).

Specific performance may be granted to vendor, though taxes and assessments are unpaid, where cash payments to be made by purchaser are more than sufficient to pay accrued assessments and taxes.

### 11. Specific performance ⬤⇒114(4).

Specific performance may be granted, though taxes and assessments are unpaid, where vendor offers to do equity.

Appeal from Circuit Court, Jefferson County; W. M. Walker, Judge.

Bill in equity by W. H. Sadler, Jr., against J. J. Eaton, for specific performance of a written agreement. From a decree overruling demurrer to the bill, respondent appeals. Affirmed.

The writing on which the cause is grounded reads:

"McDavid Real Estate & Insurance Company.
"Real Estate.
"Memorandum of Real Estate Sale.
"Birmingham, Ala., October 17, 1924.

"Received of J. J. Eaton the sum of $500.00 as earnest money in part payment of the following described real estate in Jefferson county, Ala., to wit:

"N. W. alley corner of Twentieth street between Avenue E and Avenue F, south, said lot facing 40 feet on South Twentieth street, and running 100 feet on northern line of alley. This day sold to J. J. Eaton for the price and sum of $25,000 on the following terms: $13,000 cash, of which the above $500 is a part, and the balance $12,000 to be paid as follows: Assumption of a first mortgage of $12,000, due in one, two, three and four years, bearing 6 per cent. interest, with interest payable semiannually.

"The seller shall furnish an abstract showing a good and merchantable title, and pay all taxes and assessments to date, insurance and taxes to be prorated. Should the title prove incurably defective, the above-mentioned earnest money shall be returned to the purchaser.

"In the event the purchaser fails to carry out and perform the terms of this agreement, he shall forfeit the above-mentioned earnest money as liquidated damages for such failure or refusal, and the money so forfeited shall be divided between the other party to this contract and the agent.

"It is understood and agreed that this transaction is to be closed within thirty days after delivery of abstract with the execution and delivery of a satisfactory warranty deed, provided a longer time is not required to cure defects in title.

"This receipt is given subject to the approval of the owner of the above described property.
"McDavid Real Estate & Insurance Co.,
"By F. Sutherlin.

"I hereby agree to purchase the above-described property according to the terms and conditions stated above.       J. J. Eaton.

"I hereby approve this sale on the terms and conditions as stated above.
"W. H. Sadler, Jr.
"(Signed in Triplicate.)"

Omitting presently unimportant features of the bill, it avers as follows:

"(3) That on, to wit, October 17, 1924, the respondent entered into a written contract for the purchase of said land at and for the price of $25,000, of which $500 was paid in cash, and $12,500 was to be paid in cash at the time said transaction was to have been closed, and the balance of $12,000 paid by the assumption of a first mortgage in that sum due in 1, 2, 3, and 4 years from that date, with interest 6 per cent. per annum, payable semiannually.

"It was further agreed that said transaction was to have been closed within 30 days after delivery of abstract of title, provided a longer time was not required to cure defects in the title. A copy of said contract is hereto attached and marked Exhibit A, and made a part of this bill of complaint.

"(4) Complainant avers that on, to wit, October 24, 1924, he delivered to the respondent an abstract of title showing a good and merchantable title, and no time was required to cure any defects in said title, but the respondent has failed or refused after demand to comply with his part of said contract, but has informed complainant that he will not comply with same, though the complainant has complied with all of the conditions of said contract on his part, and is ready, willing and able to do any and all things which in equity and good conscience may be required of him in the premises; that he is ready, willing and able to deposit in court, or elsewhere, a good and sufficient warranty deed conveying to him title to said lands, with the exception of the mortgage above stated."  · ·

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

On April 17, 1925, the court set aside the former submission, and thereupon received a new submission upon the original and additional demurrers to the bill, filed April 16, 1925. The court thereupon, on April 23d, overruled the original demurrers and the additional demurrers filed on April 16, 1925.

Smyer & Smyer and McClellan, Rice & Stone, all of Birmingham, for appellant.

The McDavid Realty Company is a necessary party to the cause. In bills to enforce specific performance parties to the contract, interested in the contract, are necessary parties, and the omission from the bill of such parties is egregious error. Caldwell v. Taggart, 4 Pet. 190, 7 L. Ed. 828; Brooks v. Harrison, 2 Ala. 214; 36 Cyc. 769; 25 R. C. L. 825; Carlisle v. Carlisle, 77 Ala. 339; Simmons v. Henderson, 207 Ala. 692, 93 So. 624; Clark v. Jankowski, 255 Ill. 129, 99 N. E. 338; Kempton v. Bartine, 59 N. J. Eq. 142, 44 A. 461; Pomeroy's Eq. Jur. (4th Ed.) § 1408; Isom v. Johnson, 205 Ala. 157, 87 So. 543. Where it appears from the contract sought to be enforced that defendant should have the choice between performance and payment of forfeiture money as liquidated damages, complainant will be denied specific performance. 36 Cyc. 571. The parties, having invested the agent with an independent contract right, introduced a material factor differentiating this contract from those considered in Morris v. Lagerfelt, 103 Ala. 609, 15 So. 895; McCurry v. Gibson, 108 Ala. 451, 18 So. 806, 54 Am. St. Rep. 177, and Harris v. Theus, 149 Ala. 133, 43 So. 131, 10 L. R. A. (N. S.) 204, 123 Am. St. Rep. 17. The complainant fails to aver payment of "all taxes and assessments to date," and hence cannot maintain the bill. Hart v. McClellan, 41 Ala. 251; Isom v. Johnson, 205 Ala. 159, 87 So. 543.

V. J. Nesbit, of Birmingham, for appellee.

A provision for forfeiture of cash payment as liquidated damages is not a bar to specific performance. McCurry v. Gibson, 108 Ala. 451, 18 So. 806, 54 Am. St. Rep. 177; Morris v. Lagerfelt, 103 Ala. 609, 15 So. 895; Harris v. Theus, 149 Ala. 133, 43 So. 131, 10 L. R. A. (N. S.) 204, 123 Am. St. Rep. 17; 27 R. C. L. 613; Stewart v. Griffith, 217 U. S. 323, 30 S. Ct. 528, 54 L. Ed. 782, 19 Ann. Cas. 639. The McDavid Company had no interest in property, was acting only as agent for the seller, and was not a necessary party to the bill. The allegation of compliance with all terms on the seller's part, and readiness and willingness to do all things required of him, sufficed as for unpaid taxes. The equity of the bill is sustained by Melton v. Stuart, 213 Ala. 574, 105 So. 659, and Morgan v. Lewis, 203 Ala. 47, 82 So. 7.

SOMERVILLE, J. The points of objection to the bill of complaint, as presented by the demurrers, are thus clearly stated in the brief of counsel for appellant:

"(1) The erroneous nonjoinder of the McDavid Real Estate & Insurance Company, a necessary party to the cause, that company being, as appears, a party to the written contract, performance of which is sought to be specifically enforced.

"(2) The absence of equity in the bill—as a bill for specific performance—for that the contract, itself, invested Eaton with the right, option, or election to either take the property as purchaser or to forfeit the cash payment of $500; 'the money so forfeited' being required to 'be divided between the other party to this contract and the agent,' i. e. the McDavid Company, which was stated in the agreement to be 'the agent.'

"(3) In view of the stipulation in the contract that the seller should 'pay all taxes and assessments to date,' and of the further stipulation in the writing that, in the event Eaton should fail or refuse to perform the terms of the agreement, he should forfeit the cash payment of $500, 'to be divided between' Sadler and the McDavid Company—the bill expressly averring Eaton's refusal to execute the contract by taking the property. The bill is faulty in the particulars pointed out in grounds of demurrer 13 to 16, inclusive, viz. that it is not specifically averred therein that the condition precedent to Eaton's alleged duty to perform had been met by the payment of the taxes and assessments by Sadler.

"(4) The contract provided that the seller, i. e., the complainant, 'shall furnish an abstract showing a good and merchantable title.' As this necessarily means a good and merchantable title in the seller, the bill is faulty, in the particulars pointed out in grounds of demurrer 7 to 14, inclusive, filed March 14, 1925, in that it is not specifically averred therein that such an abstract, showing the requisite title to be in complainant, was furnished."

These contentions, particularly those numbered 1 and 2, have been presented for the appellant with much force and ingenuity of argument.

[1] It appears that the memorandum of the contract in question was prepared by the McDavid Company, as agent for the vendor, Sadler. It embodied a receipt for $500 paid to the agent by the proposed purchaser, Eaton, as earnest money and part payment on the purchase price. The acceptance of this payment by the agent, for the purpose and on the terms stated in the memorandum—approved by the purchaser by his indorsement thereunder—was expressly declared to be subject to the approval of the vendor, and this approval was expressed by the vendor's separate indorsement on the memorandum. These indorsements show a direct, unequivocal, and unconditional promise on the part of the purchaser to buy, and on the part of the vendor to sell, on the terms stated in the memorandum; and neither in form nor in

substance do they suggest any option in favor of the purchaser.

Looking to the purpose and terms of this memorandum contract, and to the mode of its execution by vendor and purchaser, we are unable to concur in the view that the agent of the vendor was a party to the contract; certainly not in such a sense as to give to the agent an interest in the question of its forfeiture or enforcement under the principles of law to which it is subject. The argument in support of the contrary view is of course grounded on the provision of the contract that the default of the purchaser should forfeit the earnest money paid by him, and that "the money so forfeited shall be divided between the other party to this contract and the agent"; the bill of complaint showing that the purchaser has in fact failed or refused, after demand, to carry out his contract.

The latter clause of this provision was no doubt inserted by the agent merely to show what its compensation was to be and to show its authority to retain the amount of it out of the earnest money in its hands, in the event the contract of sale fell through by reason of the purchaser's default. It was, at most, a collateral agreement between the vendor and the agent, which in no way affected or concerned the purchaser, and was without any practical bearing upon the rights and obligations of the vendor or of the purchaser—the only real parties to the contract. The fact that the agent signed the paper is not significant, in view of the fact that it was a receipt for money received by the agent, whose signature was therefore appropriate and necessary.

[2] But, if it be conceded that the agent was, in any material sense, a party to the contract, we are still of the opinion that the agent would not be a necessary party to this proceeding for specific performance. No relief could be had against the agent as a party respondent, and none in its favor as a cocomplainant, and, so far as the fund of $500 is concerned, the agent's interest therein can in no wise be affected by the decree. If the decree denies the relief sought, the fund stands forfeited. If the decree grants the relief, it becomes a credit on the purchase money as between vendor and purchaser, the parties to this suit. In neither case can the purchaser recover the money; and in either case the right of the agent, as between agent and vendor, remains unprejudiced and unaffected. In short, the actual disposition of the money will be determined by the agreement between agent and vendor, and can in no contingency be a matter of concern to the purchaser.

[3] Counsel for appellant fully recognize the principle that a stipulation for the payment of a penalty or liquidated damages by either party to an executory contract, in the event of his default in its performance, is not a bar to the remedy of specific performance in equity at the suit of the other party, unless the contract itself shows a contrary intention. Morris v. Legerfelt, 103 Ala. 609, 613, 15 So. 895; McCurry v. Gibson, 108 Ala. 451, 457, 458, 18 So. 806, 54 Am. St. Rep. 177; Harris v. Theus, 149 Ala. 133, 141, 43 So. 131, 10 L. R. A. (N.S.) 204, 123 Am. St. Rep. 17; Melton v. Stuart, 213 Ala. 574, 105 So. 659; Koch v. Streuter, 218 Ill. 546, 75 N. E. 1049, 2 L. R. A. (N. S.) 210, and note; Stewart v. Griffith, 217 U. S. 323, 30 S. Ct. 528, 54 L. Ed. 782, 19 Ann. Cas. 639, 25 R. C. L. 230, § 29.

The cases hold that it is a question of intention, to be deduced from the whole instrument and the circumstances; and, if it appears that the performance of the covenant was intended, and not merely the payment of damages in case of a breach, the covenant will be enforced. McCurry v. Gibson, supra, 108 Ala. 459, 18 So. 806. "In other words, where the sum annexed, whether by way of penalty or damages, is so annexed for the purpose of securing the performance of the contract, equity will decree a specific performance; but where the contract stipulates for one of two things in the alternative, that is, where the party has the right either to perform certain acts, or to pay a certain amount of money in lieu thereof, then equity will not decree a specific performance of the first alternative." Koch v. Streuter, 218 Ill. 546, 75 N. E. 1049, 2 L. R. A. (N. S.) 210. But, as observed in McCurry v. Gibson, supra, 108 Ala. 451, 459, 18 So. 806, 809 (54 Am. St. Rep. 177), "all that is settled by the insertion of a simple agreement to pay liquidated damages is that, if an action is brought for damages, the recovery shall be for the amount named, neither more nor less."

[4, 5] It is clear that there is nothing in the contract before us to remove it from the influence of the general principles stated, or to deny the vendor's right to have specific performance, unless it be the provision for a division of the $500 of earnest money between the vendor and his agent, in the event of its forfeiture as liquidated damages by the default of the purchaser. This, indeed, is the theory and insistence of counsel for appellant; the argument being that that provision of the contract, or rather the legal effect of that provision, differentiates this case from the cases cited above, and requires a construction which would limit the vendor's redressive action to the appropriation of the liquidated damages prescribed, and deny the right to have a specific performance of the contract.

Upon a very careful consideration of all the aspects of the question, we are led to the conclusion that this contention is untenable. It seems to be necessarily grounded upon the assumption that the default of the purchaser ipso facto terminated the contract and executed the forfeiture of the earnest money as liquidated damages in the hands of the vendor or his agent. In 27 R. C. L. 465, § 179, the law is thus correctly stated:

"The purchaser's equitable estate or interest may be subject to be defeated under provisions therefor in the contract if he fails to comply

therewith, but this right to terminate the contract is a right conferred on the vendor and is to be exercised at his option; the purchaser has no right to take advantage of his own default and claim that his liability was thereby terminated."

And again (27 R. C. L. 645, § 406):

"As a general rule, provisions of this character are construed as intended solely for the benefit of the vendor, which he may waive, and the purchaser cannot take advantage of his own default to escape liability on the contract for the purchase money."

In such a case the purchaser's default "must be followed by some act of the vendor indicating his election to consider the contract at an end." 27 R. C. L. 660, § 421; Converse v. Blumrich, 14 Mich. 109, 90 Am. Dec. 230.

From these principles the conclusion must follow that the mere default of the purchaser, as shown by the bill of complaint, did not convert the earnest money into liquidated damages as a substitute for the equitable remedy, unless and until the vendor did some act, or made some declaration, indicative of his choice in that behalf. The retention of the money does not indicate such a choice, since it is entirely consistent with, and indeed a natural incident to, the enforcement of the contract as sought by the bill of complaint.

The provision for the appropriation of this specific money, half and half to the vendor and his agent, in the event of its forfeiture by the default of the purchaser, must be construed as conditional upon a completed forfeiture in the legal sense; that is, by the vendor's exercise of his option to that end.

[6] Apart from the considerations stated, a court would be averse to so construing a contract as to give to a minor and purely collateral provision for the payment of an agent's commission a commanding influence upon the rights and obligations of the contracting parties, defeating, in fact, the most important right of the vendor, and releasing the most important obligation of the purchaser, unless such an intention were so plainly expressed as to permit of no other reasonable conclusion. This is not injecting into the contract an omitted term or condition, but is merely reading into it principles of law with reference to which the parties must be presumed to have contracted.

[7, 8] The contract provides that "the seller shall furnish an abstract showing a good and merchantable title." It is to be presumed that this means a good and merchantable title in the vendor; but, whatever it means, it is sufficient, we think, for the bill to follow the language of the contract, and to allege compliance according to its terms.

[9] The contract further provides that the vendor "shall * * * pay all taxes and assessments to date." Generally speaking, the purchaser of property will not be compelled to take it subject to a lien or incumbrance. But it is well settled that, "if an incumbrance can be removed merely by the application of the purchase money, and the court is able to provide for the conveyance of a clear title to the vendee, the mere fact that incumbrances exist which the vendor has not yet removed, or even is unable to remove without the application of the purchase money for the purpose, will not prevent a decree for a specific performance." 25 R. C. L. 277, 278, § 78, citing Guild v. Atchison, etc., R. Co., 57 Kan. 70, 45 P. 82, 33 L. R. A. 77, 57 Am. St. Rep. 312; Foor v. Mechanics' Bank, 144 Ky. 682, 139 S. W. 840, Ann. Cas. 1913A, 714.

[10, 11] While the provision in question imposes upon the vendor the duty of paying accrued taxes and assessments, it is not made a condition precedent to the enforcement of the contract; and it is clear upon the face of it that the balance to be paid in cash—$12,000 —will be much more than sufficient to pay any assessments and taxes that could have reasonably accrued upon the property. In any event, as to such a matter, the allegation that complainant is "ready, willing and able to do any and all things which in equity and good conscience may be required of him in the premises" is a clear and complete offer of performance, and a submission to the jurisdiction and orders of the court, and this is all that is required. Jenkins v. Harrison, 66 Ala. 345, 352, 353; Taylor v. Newton, 152 Ala. 459, 462, 44 So. 583; Irvin v. Irvin, 207 Ala. 493, 496, 93 So. 517; Campbell v Lombardo, 153 Ala. 489, 492, 44 So. 862.

The case of Isom v. Johnson, 205 Ala. 157, 159, 87 So. 543, cited to a contrary conclusion in the brief for appellant, is not opposed to the principle above stated. There the bill for specific performance of a contract for the sale of land was filed by the vendee, and his right to such relief depended upon his payment of the purchase money within a limited time, which was held to be of the essence of the contract. Hence, in order to perfect his right to performance, it was necessary that he should have paid, or offered to pay, within the stipulated period, and the holding was that an allegation of readiness and willingness to perform within the time limited did not meet the requirement. That question is not presented in this case.

Our conclusion is that the demurrers to the bill were properly overruled, and that the decree appealed from should be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.