14 So.2d 687

**MITCHELL v. WHITE et al.**

8 Div. 252.

Supreme Court of Alabama.

July 16, 1943.

Norman W. Harris, of Decatur, for appellant.

Watts & White, of Huntsville, for appellees.

GARDNER, Chief Justice.

The bill is one seeking specific performance of a contract for the sale of real estate, and is filed by the vendee, Hugh T. Mitchell, against the vendors, Addison White and his wife, Carolyn White. The executory contract of sale was for the gross sum of $25,000, and was duly signed by the parties on April 21, 1943, having been prepared by the defendant Addison White, an attorney. Complainant, the vendee, assumed the payment of the ad valorem property tax for 1943 and an outstanding mortgage of $6,500, the remainder of the purchase money to be paid in cash. A deed with usual covenants of warranty, free and clear of incumbrances, was to be delivered to the vendee on or before May 31, 1943. The vendors agreed to deliver to the vendee, not later than April 30, 1943, an abstract of the title showing a good and marketable title, and that the lands were free and clear of liens and incumbrances with the exception of the 1943 property tax and the mortgage, to which reference has been made.

Paragraph 8 of the contract reads as follows: "8. In the event that the abstract of title furnished by the vendors to comply with this agreement does not show a good and marketable title to said land, as herein provided, it is agreed that they will refund to the vendee the cash payment this day made, and this agreement shall thereupon immediately become null and void."

It appears from the bill that the abstract of title furnished to the vendee, or his attorney, did show a good and marketable title in the defendant Addison White, with the exception of the matter now to be mentioned. It appeared from the abstract that this particular land was a part of a body of land of 1200 acres formerly owned by Lucy M. White, the mother of Addison White, who, in December, 1935, then a widow and single, duly conveyed the 1200

acres to her five sons, one of whom was the defendant Addison White, reserving to herself, however, a life estate. The consideration was love and affection. In the fall of 1939 these five sons divided the 1200 acres among themselves by deeds duly executed, and in the division Addison White became the owner of the land involved in this suit. Counsel for the vendee, exercising due precaution, raised the inquiry as to whether or not there was due an estate tax, and if so, whether or not it had been paid. Of course, if due and unpaid, a lien existed in favor of the Federal Government therefor. 26 U.S.C.A. Int.Rev.Code, § 827. As to whether or not any tax was due was to be determined from the value of the gross estate of the decedent. 26 U.S.C.A. Int.Rev.Code, § 811. If there was due such an estate tax, the defendant Addison White, under Section 827(b), Title 26 U.S.C.A. Int.Rev.Code, would be personally liable therefor, with penalties attached for failure to so pay. Section 826(b) provides for reimbursement in such event.

Of course the abstract of title furnished the vendee made no disclosure as to the value of the gross estate of Lucy M. White. Defendant Addison White, upon the matter being called to his attention, appears to have entertained the view no such tax was due, admitting, of course, that no return had been made concerning it. The bill alleges that Lucy M. White left a gross estate of the value of $75,000, and that upon further investigation, the defendant White conceded that such an estate tax was due to be paid and that it constituted a lien upon the property. Thereupon he notified the vendee that on account of the defect in the title by reason of a lien of the Federal Government for the estate tax, the vendors would decline to convey the property, and tendered the $1,000 which had been paid pursuant to the contract. He invoked the provisions of Paragraph 8 of the contract as justifying this action, and the trial court evidently accepted this view in the decree rendered sustaining the demurrer to the bill. This is the sole question here presented for consideration.

The leading case upon which the defendants rely is that from the Massachusetts court of Old Colony Trust Co. v. Chauncey, 214 Mass. 271, 101 N.E. 423. Other authorities of like import upon which reliance is had to sustain the decree have been read and examined with care, among them, Weatherford v. James, 2 Ala. 170; Edwards Lumber Co. v. Smith, 191 N.C. 619, 132 S.E. 593; Safron v. McBurney & Son, 269 Pa. 392, 112 A. 677; Barker v. Critzer, 35 Kan. 459, 11 P. 382; Mackey v. Ames, 31 Minn. 103, 16 N.W. 541; Boehmer v. Willensiek, 107 Neb. 478, 186 N.W. 326; 10 L.R.A.,N.S., 121 (note to Eppstein v. Kuhn, 225 Ill. 115, 80 N.E. 80); 32 A.L.R. (note) 604; 98 A.L.R. (note) page 894.

But in the Old Colony Trust Company case, supra [214 Mass. 271, 101 N.E. 424], and others following in its wake, the court construed the contract as disclosing an intention on the part of all parties "that if it turns out that without fault on the part of the defendants subsequent to the execution of the contract they have a defective title, then, after refunding payments made, all obligations of both parties shall cease," and that the contract was therefore to be considered as at an end.

But in each of the cited cases it was subsequently discovered by the vendor there was an outstanding title or incumbrance which he would be required to remove in order to convey a good and marketable title. Illustrative is the Old Colony case, in which the one-sixth outstanding interest would have required the expenditure of some $50,000; and each of the cases are careful to use the expression "without fault on the part of the [vendor]." Illustrative of this distinguishing feature is the later case from the Massachusetts court of Margolis v. Tarutz, 265 Mass. 540, 164 N.E. 451, 453, where the Old Colony case was approvingly cited, but distinguished in the following statement found in the opinion: "But, if because of the fault of the party agreeing to sell a sale cannot be made in accordance with the agreement, the buyer may at his election accept the title which the seller has with a deduction in the purchase price to compensate for the deficiency, and in case of such fault the agreement for a refund of the deposit and a termination thereby of all obligations under the contract does not relieve the seller of his obligation to perform."

To like effect see, also, from the Massachusetts court, Moskow v. Burke, 255 Mass. 563, 152 N.E. 321.

Nor can reliance be had upon the case of Weatherford v. James, 2 Ala. 170, where the contract was not to convey the fee absolutely but rested expressly upon a contingency which had not happened. The right of the vendor in that case depended

upon the passage of an act of Congress. This act was never passed, and the court, speaking of this feature of the case, observed: "The right of the complainant to call on Newman for the title, has never existed. The case then bears no resemblance to those in which the vendor has been required to execute the contract cy pres. In that class of cases the vendor is estopped from saying that he cannot make title to the whole, by his contract to that effect; and if the purchaser is willing to take such title as the vendor can make, there does not appear to be any valid objection to it."

Such was the controlling thought in Minge v. Green, 176 Ala. 343, 58 So. 381, 382. The contract in that case contained a clause very similar to that here involved. It was as follows: "Title to be good and merchantable or contract void and earnest money to be refunded. Sale to be complied with thirty (30) days from date." There the wife of the vendor, refusing to sign the deed, thus left an inchoate dower right outstanding which was an incumbrance upon the title, and the defendant vendor invoked the foregoing clause that the title was to be good and merchantable or the contract void as a complete defense to the suit for specific performance in behalf of the vendee. The holding of the court, however, was to the effect that the purchaser could require performance with an abatement of the price for the value of an outstanding dower right, unless such right was removed. See 46 A.L.R. p. 748 et seq.

This is in keeping, also, with the thought that as a general rule such stipulations in a contract of this character are made for the benefit of the purchaser, and subject to waiver. Alexander v. Abernathy, 215 Ala. 41, 108 So. 849. After all, it is a question of intention to be deducted from the whole instrument in the light of the surrounding circumstances. Eaton v. Sadler, 215 Ala. 161, 110 So. 10. See numerous illustrative cases cited in 32 A.L.R. 588, and 98 A.L.R. 887.

In the instant case the vendee is ready, and indeed, anxious, that the contract entered into should be carried out. The correspondence between the parties, a part of the bill, so discloses. In a letter to the defendant Addison White, the complainant vendee makes three proposals, the first and third proposing an extension of time that the tax may be paid, or a payment of the

consideration with the exception of a sum estimated to be sufficient to cover the tax. The second alternative was as follows: "I am willing to perform the contract now and pay the consideration agreed upon with the understanding that you are to pay the tax." We interpret this to mean that the complainant is willing that the trade be consummated and that he will accept the warranty deed which, of course, would obligate the defendant to pay the tax and thus remove the incumbrance.

As we view it, a similar situation would have been presented had the ad valorem tax for 1942 been left unpaid. In such event, certainly the complainant would have been entitled to a deed, and could rest reliance upon the covenants of warranty for the defendant to pay the tax. Clearly, the vendor would not be permitted, in such a case, to plead his own default in defeat of the contract. True, there may be more difficulty in ascertaining the amount of the estate tax, and defendant may be called upon to resort to the reimbursement feature of the law, but these are differences in degree and not in kind. The principle is the same. In either event, he is not without fault. There is not here involved a question of an unexpected outstanding defect in his title which requires the expenditure of money to secure, and against which the parties may be said to have contracted. The requirement that he pay this tax is a requirement fixed upon him by law. Though the liability for this tax may have escaped for the moment the defendant's notice, yet he is charged with a knowledge of the law, and certainly presumed to have better knowledge of the value of the gross estate of his mother.

In a court of equity the vendee is looked upon and treated as the owner of the land, and the vendor, though the owner of the legal title, holds it as a trustee for the vendee. Vol. 2, Pomeroy's Equity Jurisprudence, 5th Ed., Section 368. It would be unreasonable to assume that the vendor, holding the legal title in trust for the vendee, should be permitted, by his own default, to thus destroy the entire contract. Speaking to a somewhat analogous situation, the Illinois court in Hunt v. Smith, 139 Ill. 296, 28 N.E. 809, 811, observed: "It would be absurd to suppose that the parties intended to make a breach by the vendor of his own undertaking a ground upon which he would have a right to declare the contract void. Such con-

608

struction would, in effect, make the performance of the contract a matter dependent upon the mere will or caprice of the vendor, as it would always be within his power, if he should see fit to do so, to tender to the purchaser an imperfect title, and thus avail himself of his option to rescind."

██ The requirement that the defendant White pay the tax places upon him no greater burden than rested upon him without regard to the contract. The law fixed the obligation, and the covenants of warranty in his deed would call for him to remove the incumbrance. The recent case of Asbury v. Cochran, 243 Ala. 281, 9 So.2d 887, contains some observations which have application, particularly the reference in the opinion to Sibley v. Spring, 12 Me. 460, 28 Am.Dec. 191. In the latter case there was an outstanding mortgage payable before the date of the execution of the deed, and the court presumed that the vendor owing the mortgage debt intended to pay it before the time arrived to make a deed to the purchaser. Applying like principle here, the vendee had a right to presume that the vendor would relieve the property of any tax lien which had not been specifically assumed by him in the contract.

Our case of Minge v. Green, supra, illustrates that the courts are loathe to strike down a deliberate and solemn contract of this character, and Eaton v. Sadler, supra [215 Ala. 161, 110 So. 13], discloses that it will not be done by any mere collateral agreement which does not affect substantial rights of the parties. In this latter case it was further observed: "Generally speaking, the purchaser of property will not be compelled to take it subject to a lien or incumbrance. But it is well settled that, 'if an incumbrance can be removed merely by the application of the purchase money, and the court is able to provide for the conveyance of a clear title to the vendee, the mere fact that incumbrances exist which the vendor has not yet removed, or even is unable to remove without the application of the purchase money for the purpose, will not prevent a decree for a specific performance.' "

██ But we consider further discussion unnecessary. Suffice it to say that we can-not read Paragraph 8 of the contract as justifying its annulment upon the sole ground of the existence of the estate tax as disclosed by the averments of the bill. We are, therefore, not in accord with the decree rendered, and entertain the view that the demurrer should have been overruled. It results, therefore, that the decree of the court below will be reversed and one here rendered overruling the demurrer to the bill, with the allowance of thirty days in which to answer. The cause will be remanded for further proceedings in accordance with the views herein expressed.

Reversed, rendered, and remanded.

THOMAS, BROWN, FOSTER, LIVINGSTON, and LAWSON, JJ., concur.